SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
PAUL S. COWIE, Cal. Bar No. 250131
PATRICIA M. JENG, Cal. Bar No. 272262
JOHN ELLIS, Cal. Bar No. 269221
MELISSA HUGHES, Cal. Bar No. 315727

Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email    pcowie@sheppardmullin.com
        pjeng@sheppardmullin.com
        jellis@sheppardmullin.com
        mhughes@sheppardmullin.com

Attorneys for Defendant MCGEE AIR SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY VARGAS, COREEN SILVERIE, ANA AYALA, NANCY TAPIA, AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED PERSONS,<br><br>    Plaintiffs,<br><br>  v.<br><br>MCGEE AIR SERVICES INC., AND DOES 1 THROUGH 1-25,<br><br>    Defendants. | Case No. 3:23-cv-6333<br><br>**DEFENDANT MCGEE AIR SERVICES, INC.'S NOTICE OF REMOVAL**<br><br>*[Removed from Santa Clara Superior Court, Case No. 23-CV-418962]*<br><br>Complaint Filed:  July 17, 2023 |

TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that Defendant McGee Air Services, Inc. ("Defendant") hereby removes the action *Bobby Vargas, et al. v. McGee Air Services Inc.*, pending in the Superior Court of California, County of Santa Clara, Case No. 23-CV-418962, to the United States District Court for the Northern District of California. Removal is based on the Class Action Fairness Act ("CAFA"). This Court has original subject matter jurisdiction over Plaintiffs Bobby Vargas, Coreen Silverie, Ana Ayala, and Nancy Tapia's ("Plaintiffs") lawsuit under 28 U.S.C. §§ 1332(d)(2), 1441, 1453, and 1446, because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper based on the following grounds:

## STATEMENT OF JURISDICTION UNDER CAFA

1. This Court has jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity of citizenship between at least one class member and one defendant.

2. Each of the foregoing conditions were satisfied at the time this action was initiated and now at the time of removal.

## CLAIMS AND PROCEDURAL HISTORY

3. On or about July 17, 2023, Plaintiffs filed a putative class action complaint against Defendant in the Superior Court of the State of California, County of Santa Clara, Case No. 23CV418962 (the "Complaint"). On August 1, 2023, Plaintiffs served a copy of the Summons, Civil Case Cover Sheet, Complaint, and Civil Lawsuit Notice, on Defendant. Attached hereto as Exhibits **A-D** are true and correct copies of the Summons, Civil Case Cover Sheet, Complaint, and Civil Lawsuit Notice.

4. Plaintiffs' Complaint asserts claims arising out of their employment with Defendant for: (1) Failure to Pay Overtime Wages; (2) Failure to Provide Meal Breaks; (3) Waiting Time Penalties; (4) Violation of California Labor Code §§ 204 and 210; (5) Failure to Provide Accurate Wage Statements; (6) Failure to Reimburse Business Expenses; (7) Violation of California Labor Code § 246; (8) Unlawful Business Practices; (9) PAGA Violations; (10) Civil Penalties Under Labor Code § 558; and (11) Statutory Prejudgment Interest.

5. Plaintiffs' Complaint is styled as a putative class action under Code of Civil Procedure § 382. Plaintiffs seek to represent a putative class of "[a]ll non-exempt employees of Defendant in California from the four years prior to the filing of this action until the final resolution of the claims herein." ("Putative Class"). (Complaint, ¶ 30.)

6. On August 4, 2023, Plaintiffs filed a Proof of Service on Summons. Attached hereto as **Exhibit E** is a true and correct copy of the Proof of Service on Summons filed by Plaintiffs.

7. On October 24, 2023, Defendant filed a Notice of Appearance of Counsel for Defendant McGee Air Services, Inc. and served such Notice on Plaintiffs. Attached hereto as **Exhibit F** is a true and correct copy of Defendant's Notice of Appearance.

8. On November 7, 2023, Plaintiffs and Defendant filed a Joint Complex Case Management Conference Statement in the Superior Court of California for the County of Santa Clara. Attached hereto as Exhibit **G** is a true and correct copy of the Joint Complex Case Management Conference Statement.

9. On or about December 4, 2023, Defendant filed its Answer to the Complaint in Santa Clara County Superior Court and served its Answer on Plaintiffs that same day. Attached hereto as **Exhibit H** is a true and correct copy of Defendant's Answer to the Plaintiffs' Complaint.

10. On November 16, 2023, the Santa Clara County Superior Court issued a Minute Order. Attached hereto as **Exhibit I** is a true and correct copy of the Santa Clara County Superior Court Minute Order.

11. **Exhibits A-I** are true and correct copies of all process, pleadings, and orders served upon Defendant or filed by Defendant in accordance with 28 U.S.C. § 1446(a). A copy of this

Notice of Removal will be promptly served on Plaintiffs and filed with the Superior Court of California for the County of Santa Clara. No other proceedings have been held in this action.

## DIVERSITY JURISDICTION UNDER CLASS ACTION FAIRNESS ACT

12. The Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d)(2). As set forth below, this action is removable under CAFA, pursuant to the provisions of 28 U.S.C. §1441(a), as (1) the proposed class contains at least 100 members; (2) Defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and one defendant.

13. Pursuant to *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014) and 28 U.S.C. § 1446(a), Defendant is not required to submit evidence establishing jurisdictional facts with a notice of removal. Defendant is only required to submit a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A plausible allegation of the relevant jurisdictional facts is sufficient in a notice of removal. *Dart Cherokee*, 135 S.Ct. 547 at 554. Evidence is required only if the plaintiff contests, or the Court questions, Defendant's allegations. *Id.*

## MINIMUM DIVERSITY EXISTS

14. CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

15. For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). In *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its

headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93.

16. Defendant is a corporation incorporated under the laws of Delaware. Defendant maintains its principal place of business in Washington. Defendant's corporate headquarters are located in Washington, and its administrative functions (including operations and planning) are conducted in Washington. Defendant's corporate and executive officers are employed in Washington and the actual direction, control, and coordination for Defendant take place in Washington. These facts were true at the time the action was instituted, and remain true today at the time of removal to federal court. Thus, under the foregoing standard Defendant is a citizen of Washington and Delaware for purposes of removal, and not a citizen of California.

17. To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States, and (b) a domiciliary of one particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). According to the Complaint, Plaintiffs are and were at all relevant times residents of, and citizens of California. (Complaint, ¶¶ 5-9.)

18. Plaintiffs also purport to represent classes of "[a]ll non-exempt employees *in California*" therefore asserting that the putative class members are also California residents, both at the time the action was initiated and now at the time of this removal. (Complaint, ¶ 30.) Therefore, at the date on which this civil action was filed, and at the time of this removal, at least one member of the putative class was a citizen of California and not a citizen of Washington or Delaware.

19. The presence of "Doe" defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b). Regardless, pursuant to CAFA, Defendant is not required to obtain the consent of any other defendant to remove this action. 28 U.S.C. § 1453(b).

### THE PROPOSED CLASS CONTAINS AT LEAST 100 MEMBERS

20. Defendant employed approximately **3,000** Putative Class members who worked at least one day in California during the relevant time period. Accordingly, the Putative Class meets CAFA's requirement of a class containing at least 100 members.

### THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

21. Pursuant to CAFA, the amount in controversy is satisfied when the aggregated claims of the individual members in a class action exceed the sum of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994). A defendant can establish the amount in controversy by setting forth a plausible allegation in the notice of removal that the amount placed in controversy by Plaintiffs exceeds the jurisdictional minimum. *See Dart Cherokee*, 135 S. Ct. at 554 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations"). "In measuring the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury [will] return[] a verdict for the plaintiff on all claims made in the complaint.'" *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quoting *Jackson v. American Bankers Ins. Co. of Florida*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. 2007) (original emphasis); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe.").

22. Plaintiffs' pleading in this action fail to affirmatively disclose the amount in controversy or information from which Defendant could readily ascertain the amount in controversy without independent investigation and analysis. Plaintiffs' pleading is "indeterminate" as to whether federal jurisdiction under 28 U.S.C. § 1332(d) existed within the

meaning of *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689 (9th Cir. 2005) and *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013).

23. However, the amount in controversy exceeds $5,000,000 for the simple reason that Plaintiffs admitted it. On November 10, 2023, Plaintiffs' counsel sent a correspondence to Defendant's counsel claiming to have calculated damages of $114,362,059.74. *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1069 (9th Cir. 2021) ("We have stated that a settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). Though Defendant contends that the amount claimed by Plaintiffs is not reasonable, it so far exceeds $5,000,000 that there can be no dispute the jurisdictional amount in controversy under CAFA jurisdiction is met.

24. Additionally, Defendant alleges there is more than $5,000,000 in controversy, not including costs and/or interest sought by Plaintiffs. Defendant provides the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount in controversy under CAFA jurisdiction. Defendant makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiffs' claims. Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiffs prevail with respect to any of their claims.

25. <u>Unpaid Overtime</u>: Plaintiffs allege that Plaintiffs and the Putative Class were not paid overtime premium wages for their overtime hours worked when they worked more than 8 hours per day and when they worked on Saturdays and Sundays. (Complaint, ¶ 21). Plaintiffs further allege that Defendant had a policy or a practice of failing to pay their employees overtime premium wage for all overtime worked. (*Id.*, ¶ 32).

26. Plaintiffs do not, however, provide any details as to how many hours per day or week they and the Putative Class members allegedly worked without compensation. Although Defendant denies Plaintiffs' allegations or that they or the Putative Class are entitled to any relief, it is reasonable to assume, based on Plaintiffs' allegations, that employees worked, at minimum, one hour of unpaid overtime per week, which amounts to a mere twelve minutes per shift worked.

27. In his November 10, 2023 email, Plaintiffs' counsel alleged that the Putative Class Members worked approximately 110,000 weeks during the relevant time period.

28. In California, any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. *See* Labor Code § 510(a).

29. Using a conservative assumption that each employee was paid at the hourly minimum wage in California in 2022 of $15, the amount in controversy for Plaintiffs' claim for failure to pay overtime wages to Plaintiffs and the Putative Class members is approximately **$2,475,000** (110,000 work weeks x $15 x 1.5 overtime premium = $2,475,000), based on the failure to pay overtime wages cause of action.

30. <u>Unprovided Meal Periods</u>: Plaintiffs allege Plaintiffs and the Putative Class were "<u>never</u> fully relieved of all duties during breaks," and thus Defendant failed to provide meal breaks in compliance with applicable California law. (Complaint, ¶ 26). Plaintiffs further allege that Plaintiffs and the Putative Class were not provided with a second meal period when they worked more than 10 hours per day. (*Id.,* ¶ 24)

31. Here, Plaintiffs allege they and the Putative Class were "never" provided with a compliant meal period, thus Defendant is justified in using a 100% violation rate in computing the amount in controversy based on the nature of Plaintiffs' allegations. *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); *Sanchez v. Russell Sigler, Inc.*, 2015 U.S. Dist. LEXIS 55667, *16 (C.D. Cal. Apr. 28, 2015) ("Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of [] rest periods."); *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *4 (C.D. Cal. 2018) (100% violation rate proper when allegations are "routine and systematic violations" of California's rest period laws). Though Plaintiffs allege they also worked on the weekend, Defendant will assume a five-day work-week for purposes of calculating the amount in controversy for Plaintiffs' meal period claim.

32. In California, an employer may not employ a non-exempt employee for a work period of more than five hours per day without providing the employee with a duty-free, uninterrupted meal period of no less than 30 minutes. Cal. Labor Code § 512(a). Additionally, an employer may not employ a non-exempt employee for a work period of more than ten hours per day without providing the employee with a second duty-free, uninterrupted meal period of no less than 30 minutes. *Id.*

33. The consequence of failing to provide a meal period under California law is that the employer must pay one additional hour of premium pay at the employee's regular rate of compensation for each day in which at least one meal period was not provided. Cal. Labor Code § 226.7(c).

34. Based on 110,000 workweeks, 5 alleged meal period violations per week, and at least $15/hour as the regular rate of compensation, the amount in controversy on Plaintiffs' meal period claim is at least **$8,250,000** (110,000 weeks x 5 alleged violations x $15/hour = $8,250,000).

35. <u>Failure to Provide Accurate Itemized Wage Statements</u>: Plaintiffs allege that Defendant did not provide Plaintiffs and the Putative Class with accurate itemized wage statements reflecting all wages owed. (Complaint, ¶ 23.)

36. Under Cal. Labor Code § 226(e), an employee who suffers injury as a result of an intentional and knowing failure by his or her employer to provide complete and correct wage statements may recover $50 for the initial pay period in which a violation occurs and $100 for each violation in a subsequent pay period, up to a maximum of $4,000.

37. Because Plaintiffs' wage statement claim is derivative of Plaintiffs' claims for unpaid wages and unprovided meal periods, and because Plaintiffs' allegations support an assumption of unpaid wages per employee each week, and an assumption of 5 unprovided meal periods and unpaid meal period premiums per week, it is reasonable to assume that Plaintiffs claim that every wage statement issued to the putative class was defective in some manner. *See Wicker v. ASC Profiles LLC,* 2021 WL 1187271, at *4 (E.D. Cal., 2021) ("Therefore, because it is more likely than not that putative class members each suffered one meal and one rest break

violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence."); *see also Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *3 (E.D. Cal. 2019) ("Given the allegations, it is reasonable to assume the class members suffered at least one violation (e.g. one missed meal or rest break) per pay period. This Court therefore finds, based on the Complaint, [defendant]'s assumption of a 100 percent violation rate [for plaintiff's wage statement claim] is reasonable."); *see also Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *8 (S.D. Cal. 2019) ("Therefore, since one missed meal and rest period was reasonable, that would mean that every wage statement was inaccurate and subject to the penalties. Accordingly, the Court concludes that a 100% violation rate is a reasonable assumption based on these claims.").

38. The statute of limitations period on Plaintiffs' wage statement claim is one year. Cal. Code Civ. Proc. § 340; *Trigueros v. Stanford Fed. Credit Union*, 2021 WL 2649241, at *7 (N.D. Cal., 2021).

39. Defendant independently determined based on its own business records that during the relevant time period (one year prior to filing of this action) through the date of this Notice, there were at least 70,000 weeks worked by the Putative Class. Throughout the entire relevant period, Defendant paid and issued wage statements to its non-exempt employees in California once every two weeks. Therefore, there are at least 35,000 wage statements at issue (70,000 weeks ÷ 2 weeks per wage statement = 35,000 wage statements). Defendant employed at least 1,750 putative class members who received at least one wage statement during the relevant time period, meaning that 1,750 wage statements are subject to the $50 penalty and the remainder are subject to the $100 penalty provided for in Cal. Labor Code § 226(e)(1).[1] *Id.* Plaintiffs' wage statement claim therefore places at least **$3,412,500** in controversy ([1,750 putative class members x $50] + [[35,000 wage statements – 1,750 putative class members] x $100] = $3,412,500).

---

[1] There are 68 weeks between July 27, 2022 and the date of this Removal, meaning that no putative class member has more than 34 wage statements at issue during this period. Because 41 wage statements are required to reach the $4,000 maximum penalty under Cal. Labor Code § 226(e)(1), it is impossible for any putative class member to reach the cap in the time period Defendant uses to estimate the amount in controversy. The $4,000 cap is therefore irrelevant to Defendant's amount in controversy calculation.

40. <u>Waiting Time Penalties:</u>  Plaintiffs also allege that Defendant failed to pay timely wages to Plaintiffs and the Putative Class upon separation of employment, for which Defendant is allegedly liable for waiting time penalties equal to one workday's wages for each day the wages were not paid, up to a maximum of 30 days' wages.  (Complaint, ¶ 22)

41. Cal. Labor Code § 201(a) requires an employer to pay a discharged employee all "wages due and unpaid at the time of discharge…immediately."  Cal. Labor Code § 202(a) requires an employer to pay an employee who quits all outstanding earned wages within 72 hours of quitting, or at the time of quitting if the employee gave at least 72 hours' notice.  Cal. Labor Code § 203(a) provides that "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201…202…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  The California Court of Appeal has interpreted Cal. Labor § 203 to provide for wages that would ordinarily be earned on 30 full workdays, even when the 30 day period after the earned wages of a quitting or discharged employee become due and are unpaid includes days that the employee would not have worked had they remained employed.  *Mamika v. Barca*, 68 Cal. App. 4th 487, 489 (1998).

42. Because Plaintiffs' section 203 waiting time penalty claim is derivative of his other allegations, it is reasonable to assume that every discharged or quitting employee had at least some alleged unpaid wages and therefore would be entitled to waiting time penalties for up to 30 days until this action was commenced, if Plaintiffs prevail.  *See Amezcua v. CRST Expedited Inc.*, 2023 WL 2002085, at *7 (N.D. Cal. 2023) (derivative waiting time allegations supports 100% assumed violation rate for purposes of removal*); see also Salonga v. Aegis Senior Communities, LLC*, 2022 WL 1439914, at *4 (N.D. Cal. 2022) ("[C]ourts in this district and others within the Ninth Circuit have accepted a 100-percent violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees.").  Therefore every putative class member who was either discharged or quit more than 33 days prior

to the filing of this action would accrue 30 days of waiting time penalties, if Plaintiffs prove their allegations.[2]

43.   Defendant independently determined based on its business records that at least 2,000 Putative Class members quit or were discharged during the relevant time period of three years prior to the filing of the complaint. Based on a minimum wage rate of $15/hour in effect in California in 2022 and a typical 8 hour workday, Plaintiffs' waiting time allegations place at least **$7,200,000** in controversy (2,000 discharged or quitting employees x $15/hour x 8 hours per day x 30 days = $ 7,200,000). Thus, by itself, Plaintiffs' waiting time penalty claim exceeds the jurisdictional minimum.

44.   <u>Failure to Reimburse Business Expenses</u>:  Plaintiffs allege that they and the Putative Class members were not reimbursed for incurring necessary business expenses. (Complaint, ¶ 27). However, the Complaint is indeterminate as to the amount of business expenses allegedly incurred by Plaintiffs and the Putative Class members such that Defendant is unable to determine the amount in controversy placed at issue by Plaintiffs' claim for unreimbursed business expenses. Nevertheless, as outlined in detail above, the amount in controversy placed at issue by Plaintiffs' other claims greatly exceeds the jurisdictional minimum under CAFA.

45.   <u>Failure to Pay Sick Leave</u>: Plaintiffs allege that Defendant's policies and practices failed to comply with the California Labor Code with regard to Plaintiffs and other Class Members' accrual of paid sick days. (Complaint, ¶ 82). However, the Complaint is also indeterminate as to the amount of sick leave that was allegedly not provided to Plaintiffs and the Putative Class members such that Defendant is unable to determine the amount in controversy placed at issue by Plaintiffs' claim for failure to provide or pay for sick leave. Nevertheless, as outlined in detail above, the amount in controversy placed at issue by Plaintiffs' other claims greatly exceeds the jurisdictional minimum under CAFA.

---

[2] The reason for 33 days prior to filing rather than 30 is that unpaid wages do not become due to a quitting employee under Cal. Labor Code § 202 for 72 hours after quitting, unless 72 hours' notice is given.

46. <u>Plaintiffs' Claim for Attorneys' Fees</u>: For purposes of federal subject matter jurisdiction, "[t]he amount in controversy includes the amount of damages in dispute, as well as attorneys' fees, if authorized by statute or contract." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998). The Ninth Circuit has held "that attorneys' fees were properly included in the amount in controversy in a class action." *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007) (abrogated on other grounds *by Standard Fire Ins. Co. v. Knowles*, 568 U.S. 558 (2013)). In *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy. Plaintiffs' causes of action permit Plaintiffs to recover attorneys' fees. *See* Cal. Lab. Code §§ 226 & 1194; *Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016) ("[F]ederal courts apply state law for attorneys' fees to state claims because of the *Erie* doctrine."). Although not a per se rule (*see Fritsch*, 899 F.3d at 796, n.6), courts may use a 25% benchmark when calculating the attorneys' fees in controversy, including for claims arising under state law. *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. 2012); *see also Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *see also Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 483 (2016) (approving percentage of recovery measure of fees in common fund cases).

47. Based on the reasonable estimate of the amount in controversy placed at issue in the Complaint outlined above, a 25% fee award would exceed the minimum amount in controversy of $5,000,000 required by CAFA by itself ($21,337,500 amount in controversy x 25% = $5,334,375).

48. The amount in controversy requirement for CAFA is therefore easily satisfied.

## NONE OF THE CAFA EXCEPTIONS APPLY

49. The CAFA statute includes a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)–(5). However, none of these exceptions are applicable here.

50. The first is a discretionary exception under which a Court may decline to exercise jurisdiction if more than one-third of the putative class members are citizens of the state in which the action was filed *and* the primary Defendant is a resident of that state. 28 U.S.C. § 1332(d)(3). The second is a mandatory exception under which a Court shall decline to exercise jurisdiction if more than two-thirds of the putative class members are citizens of the state in which the action was filed *and* the primary Defendant is a resident of that state. 28 U.S.C. § 1332(d)(3).

51. Here, the action was filed in California and Defendant is a citizen of Washington and Delaware for purposes of removal, and not a citizen of California. Therefore, these exceptions do not apply.

52. Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions for defendants who are government entities or putative classes which number less than 100 in the aggregate. 28 U.S.C.§§ 1332(d)(5)(A)–(B). Given that Defendant is not a governmental entity, and the proposed class well exceeds 100 members, these exceptions also do not apply.

## SUPPLEMENTAL JURISDICTION

53. Under 28 U.S.C. § 1367(a):

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

54. To the extent the Court concludes it lacks original jurisdiction over any of Plaintiffs' claims, it should exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a), since each of Plaintiffs' causes of action emanate from and form part of the same "case or controversy" as Plaintiffs' other claims, such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in the Plaintiffs' Complaint. *See Executive*

*Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock v. Solana Beach Do It Yourself Dog Wash, Inc.*, 2007 WL 1989635, at *3 (S.D. Cal. 2007).

55.  Here, the Court has supplemental jurisdiction over Plaintiffs' non-class PAGA claim, because those claims emanate from and form part of the same "case or controversy" as Plaintiffs' class claims, such that they should all be tried in one action.  *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990).  Plaintiffs' PAGA claim seeks to recover civil penalties arising from the same exact alleged wage and hour violations alleged in Plaintiffs' class claims.  *See Thompson v. Target Corp.*, 2016 WL 4119937, at *12 (C.D. Cal. 2016) ("Plaintiff's PAGA and class claims concern the same misconduct by Defendant and the PAGA claim is therefore properly within the Court's supplemental jurisdiction.").  Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in the Complaint.  *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock*, 2007 WL 1989635, at *3.

56.  None of the exceptions to supplemental jurisdiction found in 28 U.S.C. § 1332(c) are applicable to this case.  Plaintiffs' PAGA claim does not raise novel or complex issues of State law different from the class claims, they do not substantially predominate over the named Plaintiffs' individual claims, the class claims have not been dismissed, and there are no exceptional circumstances or compelling reasons for declining jurisdiction.  The exceptions enumerated in 28 U.S.C. § 1332(c) are the exclusive grounds under which the Court may decline to exercise supplemental jurisdiction.  *Exec. Software N. Am.*, 24 F.3d at 1556.

57.  For these reasons the Court has supplemental jurisdiction over any claims pleaded by Plaintiffs falling outside of the Court's original jurisdiction, including but not limited to Plaintiffs' claim for civil penalties under PAGA, Labor Code §§ 2699, *et seq.*  (Complaint, ¶¶ 96-104).

**TIMELINESS OF REMOVAL**

58.  Under 28 U.S.C. § 1446(b), there are "two thirty-day windows during which a case may be removed—during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be

ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005).

59.   When a pleading or paper is "indeterminate," a defendant is under no duty to investigate the facts showing the basis for removal, and the 28 U.S.C. § 1446(b) 30-day windows do not begin to run. *Id.* at 692–95. "[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Id.* at 694. This reasoning was confirmed in *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013): "Even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document."

60.   It is well-settled that a pleading or paper that discloses grounds to remove on a basis other than CAFA does not start any deadline to remove under the jurisdiction conferred by CAFA. *See Kenny v. Wal-Mart Stores*, 881 F.3d 786, 791 (9th Cir. 2018) ("These general removal principles apply equally in the context of removals premised upon CAFA . . .'a defendant may remove a case from state court within thirty days of ascertaining that the action is removable under CAFA, even if an earlier pleading, document, motion, order, or other paper revealed an alternative basis for federal jurisdiction.'") (quoting *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1180 (9th Cir. 2015)); *see also Castro v. ABM Industries, Inc.*, 2017 WL 4682816, at *3 (N.D. Cal. Oct. 19, 2017) (finding that defendant timely removed upon learning the amount in controversy was over $5 million from plaintiff's trial plan). *Jordan* also confirms that CAFA must be construed liberally in favor of removal. *Id.* at 1183–84.

61.   *Roth* holds that the two 30-day windows in 28 U.S.C. § 1446(b) are not the exclusive times in which a defendant can remove. Thus, if a defendant never receives a pleading or other paper affirmatively disclosing the grounds for removal under CAFA, the defendant can remove under CAFA at any time. *Roth*, 720 F.3d at 1126 ("A CAFA case may be removed at any time, provided that neither of the two 30-day periods under § 1446(b)(1) and (b)(3) has been

triggered."); *see also Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018) ("[W]e will not 'charge defendants with notice of removability until [they have] received a paper that gives them enough information to remove'"); *see also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]s long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time.").

62. The only papers that start the second 30-day window under 28 U.S.C. § 1446(b) are those received from other parties in the litigation. *Calkins v. Google, Inc.*, 2013 WL 3556042, at *3 (N.D. Cal. 2013) ("[T]he plain language of the statute is clear that 'other paper' refers to a document received from another person or party in connection with the litigation."); *see also Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 284 (6th Cir. 2016) ("Every circuit to have addressed this issue has . . . adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper provided *by the plaintiff* to the defendant.") (original emphasis). That a defendant can discern or has discerned removability from its own records does not begin either of the non-exclusive 30-day windows for removal. *See Roth*, 720 F.3d at 1126; *see also Jakuttis v. Allstate Indem. Co.*, 2015 WL 3442083, at *4 (C.D. Cal., 2015) ("The crux of Plaintiff's argument for remand—that Defendant could have removed earlier based on information contained in its own records—is thus contradicted by Ninth Circuit case law.") The Ninth Circuit in *Harris*, 425 F.3d at 495, adopted the following rule from the Fourth Circuit: "We will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when. Rather, we will allow the court to rely on the face of the initial pleading and on the documents *exchanged in the case by the parties* to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." (quoting *Lovern v. GMC*, 121 F.3d 160, 162 (4th Cir. 1997)) (emphasis added).

63. None of Plaintiffs' pleadings in this action, affirmatively disclosed a ground for CAFA removal. Thus, Defendant never received any pleading, motion, order, or other paper affirmatively disclosing that the amount in controversy in this action exceeds $5,000,000.

64. Arguably, Plaintiffs' November 10, 2023 correspondence that disclosed that the amount in controversy exceeds the jurisdictional amount under CAFA, potentially started the clock on Defendant's time to file this Notice (Plaintiff's correspondence did not reveal diversity between the parties). Assuming that Plaintiffs' November 10, 2023 correspondence started the clock running, the last day for Defendant to file this Notice would be December 9, 2023. Here, removal has been effected before December 9, 2023.

65. This notice of removal filed on December 6, 2023 is therefore timely.

## JOINDER

66. Defendant is not aware of any other defendant that exists and who has been named in the Complaint or who has been served with a summons and the Complaint. The only defendants named in Plaintiffs' Complaint are Defendant and fictitiously named Doe defendants, whose presence is disregarded for purposes of removal.

## VENUE

67. Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c), and 1391.

## NOTICE TO PLAINTIFFS AND STATE COURT

68. This Notice of Removal will be promptly served on Plaintiffs and filed with the Superior Court of the State of California in and for the County of Santa Clara.

69. In compliance with 28 U.S.C. section 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on Defendant or filed by Defendant are attached hereto as **Exhibits A through I.**

70. In the event this Court has any question regarding the Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to fully brief the basis for this removal and address any questions the Court may have.

WHEREFORE, having provided notice as is required by law, the above-entitled action is removed from the Superior Court for the County of Santa Clara to this Court.

Dated: December 7, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Paul S. Cowie*
PAUL S. COWIE
PATRICIA M. JENG
JOHN ELLIS
MELISSA HUGHES
Attorneys for Defendant
MCGEE AIR SERVICES INC.